# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Weston-Young,      :
                                  :
                Petitioner   :
                                  :
            v.             : No. 773 C.D. 2017
                                  : Submitted: October 27, 2017
Workers' Compensation Appeal  :
Board (Central Bucks School    :
District),                   :
                                  :
              Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE J. WESLEY OLER, JR., Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED: January 30, 2018

Carol Weston-Young (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision granting Central Bucks School District's (Employer) Petition to Terminate Compensation Benefits (Termination Petition). Claimant challenges the WCJ's reliance on the testimony of Employer's medical expert in determining that she fully recovered from her accepted work injury. Upon review, we affirm.

## I. Background

Claimant worked for Employer for 12 years as a bus driver. On January 15, 2014, Claimant sustained a work-related injury described in a Notice of Temporary Compensation Payable (NTCP) as a cervical strain/thoracic strain.

In November 2015, Employer filed a Termination Petition alleging that Claimant fully recovered from her work injury and was able to return to unrestricted work as of October 1, 2015. Claimant denied the allegations. A hearing ensued before a WCJ. The WCJ made the following findings.

Claimant testified that, on January 15, 2014, she sustained a work injury to her cervical and thoracic spine while attempting to pull open a large rolling gate, which was 20-25 feet high and wide enough for two school buses to pass through. She experienced pain located in her thoracic spine -- the area behind her heart or chest wall. She acknowledged prior problems with her thoracic spine, predating the January 15, 2014 work injury. In February 2011, she underwent surgery on her thoracic spine. She returned to work but continued to have issues while driving. In spring 2013, Claimant underwent another surgery on her thoracic spine. She returned to work and continued working until the January 15, 2014 incident. Prior to starting her employment with Employer, Claimant experienced no back pain. WCJ's Opinion, 6/30/16, Finding of Fact (F.F.) No. 4.

Claimant testified that, after the work incident, the symptoms in her chest increased, causing difficulty in performing her daily activities. She sees a neurologist, takes medication, and receives injections. Although she returned to work in a light-duty position after the incident, Employer terminated her employment because she was unable to return to her full-duty position. Claimant

testified that no physician ever diagnosed her with Scheuerman's Disease. F.F. No. 4.

In support of its Termination Petition, Employer presented the deposition testimony of Donald Leatherwood, M.D. (Employer's Physician), who is board certified in orthopedic surgery. He examined Claimant on October 1, 2015, reviewed her medical records, and accepted a history from her. Employer's Physician opined that it was obvious that Claimant had a longstanding history of Scheuerman's Disease, which is an increased kyphosis of the thoracic spine. He explained that the disease is a congenital developmental process that has nothing to do with her work injury. He recognized that Claimant could have sustained a cervical strain/thoracic strain, superimposed on an underlying thoracic disease. However, he testified that the mechanism of injury as described by Claimant – opening a gate – was not the type of mechanism that would cause her injury. Notwithstanding, he opined that Claimant had fully recovered from the accepted injury as of the date of his exam on October 1, 2015. He further opined that any treatment Claimant needs for her thoracic spine is not related to the work injury but to her underlying condition. According to Employer's Physician, Claimant is capable of returning to work having found no objective medical evidence that would preclude Claimant from doing her job. F.F. No. 3.

Claimant offered the deposition testimony of Todd Bromberg, M.D. (Claimant's Physician), who is board certified in neurology and in pain management. He diagnosed Claimant with a herniated disc with thoracic radiculopathy, thoracic facet arthritis, and myofascial pain. He opined that Claimant's work injury caused an acute aggravation of her pre-existing condition. He initiated medication and suggested thoracic radiofrequency rhizotomy. Claimant's Physician testified that

3

Claimant has not fully recovered from her work injury. Based on her condition, he opined that Claimant was not capable of returning to work as a bus driver. F.F. No. 5.

Claimant's Physician did not consider or otherwise diagnose Claimant with Scheuerman's Disease or treat her for this condition, noting that the disease is typically a condition diagnosed in the pediatric population and more commonly affects the lumbar and sacral region. Claimant's Physician acknowledged he did not review any records predating Claimant's injury because they were not available to him. He had no records with regard to either of Claimant's surgeries prior to the work injury. He did not know how long Claimant experienced thoracic spine pain prior to the work injury. He acknowledged Claimant had degeneration in her thoracic spine. Claimant's Physician admitted that the comparison of a 2012 MRI to a 2014 MRI showed the disc herniation to be unchanged. He admitted that any cervical spine condition or injury had resolved. F.F. No. 5.

To the extent the medical experts disagreed, the WCJ found the opinions of Employer's Physician to be more credible than the opinions of Claimant's Physician. F.F. No. 6. In reaching this credibility determination, the WCJ noted Claimant's two thoracic surgeries prior to the work injury; Claimant's Physician's attempt to expand the description of the work injury to include, *inter alia*, a herniated disc, while simultaneously admitting that the condition of the disc was unchanged between pre- and post-injury MRIs; and Claimant's Physician's admission that Claimant's problems could be caused by her pre-existing degenerative condition. F.F. No. 6. In addition, the WCJ found Claimant's testimony generally credible, but to the extent Claimant related her current difficulties to pulling a rolling gate, rather than her degenerative condition and

4

previous surgeries, he found her testimony to be unpersuasive in consideration of Employer's Physician's testimony. F.F. No. 7.

Based on these findings, the WCJ determined that Employer proved through credible, competent expert evidence that Claimant fully recovered from her work injury and was able to return to unrestricted work as of October 1, 2015. The WCJ also concluded that Claimant failed to expand the scope of her injury beyond the accepted work injury of cervical and thoracic strain. Thus, the WCJ granted Employer's Termination Petition. The Board affirmed the WCJ's decision on appeal and Claimant now petitions this Court for review.[1]

## II. Issue

On appeal, Claimant argues that the WCJ erred in granting the Termination Petition because Employer did not present unequivocal medical evidence that Claimant's ongoing complaints, which are in the same part of her body as the accepted work injury, were unrelated to the work injury. Employer's Physician merely testified that Claimant's work injury was superimposed upon an underlying degenerative process. However, he did not explain how Claimant's ongoing symptoms were no longer related to her work injury. Thus, Claimant argues Employer's Physician's testimony did not constitute competent medical evidence to support the WCJ's decision.

---

[1] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. 2 Pa. C.S. § 704; *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

5

### III. Discussion

Initially, we note, as the ultimate fact-finder in workers' compensation cases, the WCJ "has exclusive province over questions of credibility and evidentiary weight . . . ." *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness in whole or in part. *Id.*

Moreover, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). We examine the entire record to see if it contains evidence that a reasonable person might find sufficient to support the WCJ's findings. *Id.* If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.* Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. *Id.*

In order to secure a termination of benefits, an employer "must prove that a claimant's disability has ceased, or that any existing injury is not the result of the work-related injury. An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from the work-related injury." *O'Neill v. Workers' Compensation Appeal Board (News Corp. LTD.)*, 29 A.3d 50, 53 (Pa. Cmwlth. 2011) (citations omitted). Where a claimant complains of continued pain, the burden in a termination petition is met when "an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical

6

findings which substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997); *accord Marks v. Workers' Compensation Appeal Board (Dana Corp.)*, 898 A.2d 689, 693 (Pa. Cmwlth. 2006). The burden does not shift to the claimant because the disability is presumed to continue until proven otherwise. *Marks*, 898 A.2d at 693.

Whether a medical opinion is equivocal is a question of law fully reviewable on appeal. *O'Neill*, 29 A.3d at 57. A determination as to equivocality must be based on a review of the entire testimony. *Id.* Medical testimony is unequivocal if a medical expert testifies, after providing a foundation for the testimony, that in his professional opinion, he believes or thinks a fact exists. *Id.* However, to be unequivocal, every word of a medical expert's testimony or opinion "does not have to be certain, positive, and without reservation or semblance of doubt." *Id.*

Here, the WCJ credited Employer's Physician's opinion that Claimant fully recovered from her accepted work injury, a cervical strain/thoracic strain, and that any remaining condition is unrelated to the work injury. F.F. Nos. 3, 6. Employer's Physician's credible testimony established that Claimant fully recovered from her work-related injury; Claimant required no further treatment related to her work injury; and, Claimant could return to work without restrictions. With regard to Claimant's underlying condition, Employer's Physician testified:

> [Claimant] has a longstanding history of what's called [Scheuerman's] disease, which is an increased kyphosis of the thoracic spine. It is a congenital developmental process. It has nothing to do with injury. That's why she required her surgery and fusion. Basically, it means the spine curves in a forward direction, and the issue or problem is either actual pain in the thoracic spine itself, or

7

in significant cases can be [a] compromise of lung function. I don't think she had any of that, but I think she probably had pain at that one level. So, it's called [Scheuerman's] disease. It's a process that goes on through a person's lifetime. It's not curable with any kind of medicine or pills or anything, and usually if it's treated, surgery is what's required in terms of fusion.

Reproduced Record (R.R.) at 103a.

As to Claimant's work injury, Employer's Physician testified that, based upon the mechanism of injury, it appears that Claimant "sustained a sprain/strain of her lower cervical region and thoracic region, superimposed upon this underlying thoracic disease process." R.R. at 103a. He limited the diagnosis to the cervical and thoracic sprain injury, explaining that the mechanism of injury would not have caused a cervical or a thoracic disc herniation. R.R. at 104a.

When asked why there was not an aggravation of her underlying disease process or degenerative condition, Employer's Physician responded:

Well, two things: It goes back to more or less what I just testified to, but I'll put it together. One is mechanism of injury. There's simply not a mechanism here to cause a significant anatomic derangement to either the thoracic or cervical spine. These are areas that are very well invested with musculature and ligamentous support. They don't get injured simply by opening a door, even if they have underlying processes. That's number one.

The second thing is there is no evidence in this case whatsoever that there was any furthering of the disease process by virtue of this injury. One has to -- for an aggravation, I believe one has to see that the disease process is affected by the injury, and it is made to go more quickly, let's say. And there's absolutely no evidence of that whatsoever. The MRI scans very clearly show that there's no anatomic derangement of any sort, so there's no furthering of the disease process by virtue of anatomy, and therefore, there's no furthering of the disease process by

8

this injury. The injury certainly could be superimposed upon it, but the disease process was not changed by it.

R.R. at 105a.

Further, Employer's Physician testified that the typical recovery time for a cervical or thoracic sprain/strain type injury was six weeks. R.R. at 107a, 120a. He opined that, as of the date of his examination on October 1, 2015, Claimant had fully recovered from the cervical[2] and thoracic strain and was capable of returning to work without restrictions. R.R. at 103a, 106a, 107a, 121a, 139a. Although Employer's Physician recognized that Claimant may have ongoing symptoms in the thoracic spine, he related these problems to her underlying disease and not to the work injury, which had resolved. R.R. at 106a, 120a, 122a.

Upon review, Employer's Physician competently testified within a reasonable degree of medical certainty that Claimant fully recovered from the work injury, and he adequately explained why Claimant's current thoracic spine complaints are not related to the work injury. R.R. at 107a-108a. The WCJ properly concluded that this unequivocal, credible medical testimony was sufficient to satisfy the burden of proof on Employer's Termination Petition. Although Claimant assigns error in the WCJ's decision to credit Employer's Physician's opinions over those offered by Claimant's Physician, we may not disturb the WCJ's credibility determinations or his resolution of conflicting medical testimony, which is within the WCJ's exclusive province as fact-finder. *See Furnari; A & J Builders*.

Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

---

[2] Claimant's Physician also opined that Claimant's cervical injury had resolved. R.R. at 71a.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Weston-Young,               :
                                              :
                   Petitioner   :
                                                :
                    v.           : No. 773 C.D. 2017
                                                :
Workers' Compensation Appeal    :
Board (Central Bucks School       :
District),                              :
                                                :
                  Respondent : 

O R D E R

AND NOW, this 30th day of January, 2018, the order of the Workers' Compensation Appeal Board, dated May 10, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge